UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No: 00-6353-CR-WPD

JEFFERSON LEVINE,

        Petitioner,

vs.

UNITED STATES OF AMERICA,

        Respondent.
_____/

**MOTION FOR RELIEF OF JUDGMENT PURSUANT
TO FED.R.CIV.P. RULE 60 (b)(6)**

    The petitioner, hereby moves this Honorable Court for Relief of the Judgment of this case pursuant to Fed.R.Civ.P. Rule 60(b)(6), that this court may relieve a party from a final judgment for reasons justifying relief from the operation of the judgment.

    The Supreme Court issued its opinion in <u>Gonzalez v. Corsby</u>, 125 S.Ct. 2641 (2005) that the Court reinvigirated Rule 60(b), that holds when a defendant's Section 2255 Motion is denied on grounds that are later shown to be either factually incorrect or based upon an erroneous legal standard, a defendant may seek relief under Rule 60(b). In addition the court held that such an avenue of relief would not fall under the extremely strict standard for a successive 2255 motion.

1

NON-COMPLIANCE OF S.D. fla. L.R. 5.1A / 5.1A5 / 5.1A2

## SUMMARY OF ARGUMENT

### PETITIONER CONTENDS THAT THE INDICTMENT FAILED TO PROVIDE NOTICE OF THE MAXIMUM PENALTY IN 21 U.S.C. SECTION 841(a)(1)

Petitioner argues that the indictment failed to provide notice of the maximum penalty he was facing because it alleged acts in violation of 21 U.S.C. §841(a)(1) only and did not specify that he faced the possibility of an enhanced sentence pursuant to 21 U.S.C. §841(b)(1)(A). Petitioner asserts that without notice from the indictment of the maximum penalty he was facing, he could not knowingly and intelligently decide whether to plead guilty or go to trial.

The Eleventh Circuit held and included that the indictment put petitioner on notice of the possible penalties facing, including the possibility of life imprisonment.

Petitioner contends that this was error, that the petitioner was not put on notice of the possiable penalty that he was facing life imprisonment. The indictment clearly reads that the petitioner violated Title 21 U.S.C. Section 841(a)(1) "only."

In addition, with regards to the substantive offense, the Court merely instructed the jury that:

> Title 21, U.S.C.§841(a)(1), makes it a federal crime or offense for anyone to possess a controlled substance with intent to distribute it.
>
> Cocaine base, commonly know as crack cocaine, is a controlled substance" within the meaning of the law.
>
> The defendant can be found guilty of that offense only if all the following facts are proved beyond a reasonable doubt. First, that the defendant knowingly and willfully possessed cocaine base, commonly known as crack cocaine, as charged.

2

>And second, that the defendant possessed the substance with intent to distribute it.
>
>And third, as to count one, the mixture and substance was in excess of five grams of cocaine (crack).
>
>As to count two, the mixture and substance was in excess of 50 grams of cocaine (crack).

No where during the jury instructions did the court instruct the jury as to an enhanced sentence under §841(b)(1)(A), therefore due to the court's failure to inform the jury of the enhanced sentence that the petitioner would face under §841(b), this sentence was unconstitutional on its face.

In Blakely v. Washington, 124 S.Ct, 2531 (2004), and United States v. Booker, No. 04-104, 2005 WL50108 (US Jan.12, 2005), the Supreme Court held that the Washington sentencing guidelines and the federal sentencing guidelines violated defendant's right to a jury trial to the extent that the two schemes provided for increases to the maximum term of the standard sentencing range on the basis of facts that were found by judges rather than juries. The Court's holdings were based on the principle recognized in Apprendi v. New Jersey, 530 U.S. 466, (2000), that any fact, other than that of a prior conviction, that increase a maximum sentence must be found by a jury beyond a reasonable doubt, or admitted by the defendant.

The fact that the petitioner was enhanced under a statute that was not listed in the indictment nor submitted to the jury, or proven beyond a reasonable doubt clearly is a structure error, citing the Supreme Court's decision in Sullivan v. louisiana, 508 U.S. 275 (1993), whereas the Supreme Court held in Sullivan, that a defect in a jury instruction describing reasonable doubt was structural error.

3

In the case at hand, there was no jury finding beyond a reasonable doubt of aggravating factors warranting an enhanced sentence, that being in petitioner's case that the jury was not instructed on the enhanced sentence that the petitioner was sentence to under §841(b), that it would illogical to perform harmless error analysis in the absence of this finding.

The jury did not find that the petitioner had two or more prior convictions under §841(b), and was not instructed that Section 841(b) of 21 U.S.C. states that a person who violates section (a) involving 50 grams or more of a mixture or substance that contains cocaine base shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life.

As the Eleventh Circuit held in <u>United States v. Rogers</u>, No.99-15150, 2000 WL 1451907. <u>Rogers</u> was indicted by a Souther Disrtict of Florida grand jury for possession of cocaine base (crack cociane) with intent to distribute in violation of 21 U.S.C. §841(a)(1). He was tried before a jury on August 26, 1999, and was found guilty. Section 21 U.S.C. §841(a)(1) reads, in pertinent part; "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribue, or dispense, a controlled substance.

In addition, the Government filed its Information pursuant to §851 notifying Petitioner that the Government intended to rely on three prior felony <u>drug</u> convicitons to seek enahnced penalty.

The indictment in petitioner's case alleged that petitioner's acts violated only §841(a)(1), petitioner had no notice that he was actually going to trial on the enhanced §841(b)(1)(A) offense, and could be sentenced for such an offense up to the maximum sentence of life imprisonme

As in the concurring opinion of Justices Tjoflat, J. and Wilson, J. they clearly stated that <u>Apprendi</u> was fundamentally concerned with given the defendant notice of the sentence enhancement.

In addition, under the now <u>Blakley</u> and <u>Booker</u> regime the Supreme Court has held that to satisfy the Sixth Amendment notice requirement, the indictment must contain elements of the offense charged, "and" fairly inform the defendant of the charge(s) against which he must defend. The petitioner must be able to determine his punishment from the face of the indictment. See, <u>United States v. Sanchez</u>,___F.3d.___, 2001 WL 1242087 at *37 (11th Cir. Oct. 17, 2001).

It is been made clear by numoures of court that §841(b)(1)(A) has been rendered unconstitional, and it is also clear tha petitioner's life sentence was unconstitution, and that he must be resentenced under 21 USC §841(b)(1)(C).

In <u>Apprendi</u>, the Supreme Court held that as a matter of constitutional law, facts that expose a defendant to a punishment greater than that otherwise legally prescribed are by definition elements of a separate legal offense. 530 U.S. @ 483 n.10 (any factor that increases the penalty for a crime beyond the statutory maximum, fits within the usual definition of an element of the greater offense. Following <u>Apprendi</u> , this Court has applied this reasoning in the context of the federal drug stautes, and has treated 21 U.S.C. §841(b)(1)(A) and 21 U.S.C. §841(b)(1)(B) as separate legal offenses from the simple violation of §841(a)(1).

In <u>Jones v. United States</u>, ___U.S.____, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the Court construed 18 U.S.C. § 2119, the federal carjacking statute, as creating three separate offenses. The statute provides that when a person takes a motor vehicle by force and while possession a firearm, the punishment is (1) not more than 15 years if the victim suffered no serious bodily injury; (2) not more than 25 years if he suffered serious bodily injury; and (3) not more than life imprisonment if he died as a result of the car-jacking.

The Court rejected the government's contention that §2119 be read to create one offense with three separate punishments and held that under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt. Id. 119 S.Ct. @ 1224 n.6.

Petitioner contends that his case is clearly similar to that of <u>Jones</u>, given the lack of proper notice of the §841(b)(1)(A) charge here, petitioner should be resentenced only for a violation of §841(a)(1), which is what the charged indictment consist of, petitioner sentence should be set within the 20 year maximu of §841(b)(1)(C).

Additionally, the government filed its §851 Information putting the petitioner on notice of the prior convictions that the government was going to rely upon.

The Guidelines provide that id the maximum sentence is life, then the petitioner's offense level under the career offender provision shall be 37. See, U.S.S.G. §4B1.1(A). However, if the offense statutory maximum is twenty-five years or more, as it would be under §841(b)(1)(B)

provides for a 100 to 1 ratio between crack and powder cocaine. That is, U.S.S.G. § 2D1.4 (c) elevates the penalty for possessing 50 grams of crack cocaine to that established for 5000 grams of powder cocaine. Thus, the fact that a defendant possessed "crack cocaine," an even more so, that the defendant possessed "50 grams of crack cocaine," provides the basis for an enhanced sentence under the guidelines. Therefore, according to the holding in United States v. Booker, supra, to be eligible for a sentence premised upon the possession of 50 grams of crack cocaine, the indictment must set forth the factual allegation that the defendant's drug related activities involved at least 50 grams of crack cocaine. The indictment in the instant case did not do that. The indictment merely charged the defendant with having possessed a "detectable amount" of crack cocaine:

> "Count II
>
> On or about September 21, 2000, at Broward County, in the Southern District of Florida, the defendant,
>
> JEFFERSON LEVINE
>
> did knowingly and intentionally possess with intent to distribute in excess of fifty (50) grams of a schedule II controlled substance, that is, a mixture and substance containing **a detectable amount of cocaine base, commonly known as crack cocaine,** in violation of Title 21 U.S.C. § 841 (a)."

see, count II of the indictment. While the petitioner does aknowledge that count II did allege in excess of "50" grams of a schedule II controlled substance, however, by continuing on to

8

specify a "detectable amount" of crack cocaine, limited the amount of "crack cocaine" at issue herein to that specified "detectable amount." That is especially so, as the court is well aware, "crack cocaine" is a hard-rock like-solid substance which, unlike a drug in powder form, is physically incapable of serving as part and parcel of a mixture. The petitioner is not suggesting to the court to ignore the "in excess of 50 grams of a schedule II controlled substance" language in the indictment, what the petitioner is suggesting to the court, however, is that whatever that unlawful substance was, it was not crack cocaine if it was capable of being part of a mixture. The petitioner asks the court in all ernestness: **"How does one mix crack cocaine?"** It is the petitioner's view that such is not possible. Nor is the petitioner suggesting that the substance described as "in excess of 50 grams of a schedule II controlled substance" should not have factored into the sentence imposed by the court, but simply that such language did not provide the basis for employing the infamous 100 to 1 ratio. Here, the indictment placed a specific cap [detectable amount] on the controlled substance that triggers the 100 to 1 ratio. Therefore, under <u>United States v. Booker</u>, supra, the petitioner should be resentenced under 21 U.S.C. § 841 (b)(1)(c) formulated for a crime involving a detectable amount of cocaine base, with a maximum penalty of 20 years.

9

III

ARGUMENT.

**The 100 to 1 crack cocaine ratio does not withstand scrutiny under the "Reasonableness Standard" of United States v. Booker, 160 L.Ed.2d 621 (2005).**

In the case of United States v. Booker, supra, the court did away with the statute[18 U.S.C. § 3553 (b)] that made the United States Sentencing Guidelines ("U.S.S.G.") mandatory. The court pronounced that in the wake of it's decision courts are required to impose a sentence that is "Reasonable" in light of the factors set forth in 18 U.S.C. § 3553 (a). see also, United States v. Smith, 359 F.Supp. 2d 771, 776 (E.D. WI. 2005)(noting that 18 U.S.C. § 3553 (a) now governs federal sentencing). To the extent that the term "reasonableness" is a connotation of having duely exercised the faculty of logic, the ultimate question is one of whether the enactment of the 100 to 1 crack cocaine was a due exercise of the faculty of logic, or otherwise within the bounds of reason. In answering that question, the court need not look any further than the case of United States v. Smith, supra. In Smith, the court found that the "[n]ow notorious" 100 to 1 ratio lacks persuasive penological or scientific justification, and creates a racially disparate impact in federal sentencing. see, 359 F.Supp.2d at 777. In support of that conclusion, the court cited opinions from numerous federal courts through out the nation, reports from the sentencing commission and commentators. see, (citations from 777-78). Far from being

10

a due exercise of the faculty of logic, the court noted that "Congress dispensed with the normal deliberative process and hurriedly passed the bill." That passage took place during a climate that "[s]ome have characterized as frenzied." <u>id</u>. "A former member of the House Judiciary Committee characterized the process as 'the crasiest political poker game,' 'I'll see your five years and I'll raise you five years." <u>Ibid</u>. As it turns out, none of the three things that congress associated with crack cocaine were unique to the drug, or justified a harsher penalty than powder cocaine. First, relying on data from the Sentencing Commission, the court pronounced that the assumptions underyling the 100 to 1 ratio are unsupported by data. That the law does not target serious drug dealers, but rather, two thirds of such defendants are street level dealers. Secondly, the harmful conduct believed to have been associated with crack is belied by recent data which "[i]ndicate that significantly less systemic violence...is associated with crack cocaine trafficking than was reported earlier." <u>id</u>. "More, importantly, the prevalence of aggravating factors in crack cases 'does not differ substantially from the prevalence in powder cocaine offenses." <u>Ibid</u>. Third, the court noted that Sentencing Commission data denounces any perceived pharmcological difference between crack and powder that would justify disparate penalties. "The Commission's most recently obtained evidence confirms that the disparity in penalties is disporportionate to any reasonable assessment to crack's harmful effect." <u>Id</u>. Lastly, the court observed that, since the mid-80's, the use of crack has decreased. <u>see</u>, <u>id</u>. at 780.

In light of the factors relied upon by the court in <u>Smith</u>, there is no "reasonable" basis for the 100 to 1 disparity. That is, nothing can be found that is grounded in fact, scientific data or otherwise, which tend to suggest that congress' view respecting the necessity of the 100 to 1 ratio was well reasoned. As none of the concerns that congress had were unique to crack, nor have been cured by the "crack law," it is fair to say that the only thing that congress has accomplished by enacting the crack law is the imprisonment of countless African Americans under unjustifiably harsh and draconian penalties. For those reasons, a sentence premised upon the 100 to 1 ratio is most "unreasonable" under 18 U.S.C. § 3553 (a)(2) and (6). Accordingly, the court should adopt the opinion of the court in <u>United States v. Smith</u>, supra, and impose a sentence that meet the requirements of 18 U.S.C. § 3553 (a)(2) and (6).

## CONCLUSION

Wherefore, the court should **Grant** this motion.

Respectfully Submitted,

*/s/ Jefferson Levine*
JEFFERSON LEVINE, pro se
# 55586-004
USP Coleman
P.O. Box 1033
Coleman, FL 33521-1033

12

## CERTIFICATE OF SERVICE

I, Jefferson Levine hereby certify that I have served a true and correct copy of the foregoing.

Motion for Relief from Judgement pursuant To Fed. R. Civ. P. 60(b).

Which is deemed filed at the time it was delivered to prison authorities for forwarding, HOUSTON V LACK, 101 L.Ed 2d 245 (1988) upon the defendant/ defendants and/or his attorney/attorneys of records by placing same in a sealed postage prepaid envelope addressed to:

Laurence Bardfeld AUSA
U.S. Attorney's Office
500 E. Broward Blvd 7th Floor
Ft. Lauderdale, FL 33301

and deposited same in the United States mail at on this 28 day of Dec 2005